LUCERO, Circuit Judge,
concurring in part and dissenting in part:
I agree that defendant Hernandez was not illegally detained, and that he voluntarily consented to the search of the ear. However, I disagree with the majority’s analysis concerning defendant Silva. Because I do not conclude that Silva voluntarily waived her Miranda rights, I would affirm the district court’s order with respect to her.[2]
As the majority points out, it is the government’s burden to demonstrate the defendant’s full awareness of her rights and the consequences of waiving them, as well as the voluntariness of that waiver. Despite the obvious and grave shortcomings of the translation in this case, I am convinced that the Miranda warning given here sufficiently informed Silva of her rights. However, I do not think the government has sufficiently demonstrated that her waiver of these rights was voluntary.
A voluntary waiver must be “the product of a free and deliberate choice rather than intimidation, coercion, or deception.” Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986). Our review of whether a waiver is voluntary is de novo. United States v. Perdue, 8 F.3d 1455, 1466 (10th Cir.1993). Upon a careful reading of the interrogation during which Silva allegedly waived her rights, I conclude that Silva’s choice was a far cry from “free and deliberate.” After explaining her rights to Silva through an interpreter, Deputy Sheriff Allen sought her waiver. She declined to give it, instead asserting — or at least, inquiring about — whether she could decline to answer his inquiries:
Allen: OK. With her rights in mind, will she waive them and talk to me? I, I would like to ask her some questions. With her rights in mind, will she waive her rights and talk to me?
Translator: [With your rights, are you willing to answer any questions he asks you?]
Silva: [It also says here if, if I have the right to remain silent when they ask me a question.]
Translator: [Yes.]
Interrogation tr. at 6 (bracketed portions translated from Spanish). At this point, Silva had not yet waived her rights. Next, Allen tried again to persuade Silva to answer his questions — this time without asking her to waive her rights. Silva’s answer was ambiguous:
Allen: What’d she say?
Translator: She asked to me, there’s on the page where it says that she has the rights to remain silent.
Allen: Tell her she has that right. I’m just asking her if she will talk to me, that, that I just want to ask her some questions.
Translator: [You do have that right. But he also wants to know if you are willing to answer any questions he asks you. Yes or no? In other words, it’s, it’s, it’s up to you whether or not you want to answer any questions he asks you.]
Silva: [Yes.]
Interrogation tr. at 6-7. It is unclear whether Silva’s “Si” was an indication of understanding, or an agreement to answer some questions. Whichever be the case, it appears coercive, or at least confusing, to acknowledge Silva’s right to remain silent but to follow that acknowledgment with, “[b]ut he also wants to know if you are willing to answer any questions ...,” as if there were no contradiction there. But this presented no concern for the translator. In the very next question — which he asked on his own, without benefit of inquiry from Allen — the translator proposed to resolve any ambiguity by inventing an answer for Silva when she in fact gave none. The soliloquy:
Translator: [You are willing to answer them?] She’s, she’s willing to answer whatever your questions are.
Allen: OK. Uh. The, uh, first thing, ask her
Interrogation tr. at 7.
The evidence below supported the district court’s conclusion that the translation was *1505 inadequate. Clearly, qualified interpreters were available in Oklahoma: an interpreter from a Tulsa translation firm testified at trial, and Romo’s own wife was a Spanish teacher. In contrast, Romo had never before served as an interpreter, had only a third grade education and spoke neither English nor Spanish well. Significantly, as the majority notes, Romo mistranslated the word “waive” the one time Allen used it. At trial, he admitted that he did not know the meaning of the word “waiver.” When asked how, then, he could translate it he replied, “[w]hen you are talking, it depends on the conversation that you are on, is the way you — because I don’t have any education, so I have to put— fix in words to try to make it come out right.” Trial tr. at 76.[3]
The district court concluded that Silva’s purported waiver did not pass constitutional scrutiny, characterizing it as:
an attempted waiver of Miranda rights by an uneducated, unqualified interpreter who, from the evidence, did not know the English meaning of some of the words used by the officer interrogator, added his own, sometimes incorrect, interpretation of what was asked and answered, and promised the defendant favorable treatment and threatened incorrect, severe punishment for her failure to cooperate. The court finds that this use of an unqualified interpreter was purposeful, unlawful, and evinced a flagrant disregard for the rights of defendant Silva.
Dt. Ct. order at 8-9. It is unnecessary to reach whether the choice of an unqualified translator was “purposeful.” Purposeful or not, the inaccurate and manipulative nature of the interrogation causes me to conclude Silva’s asserted waiver was not voluntary. Accordingly, while I would REVERSE as to the district court’s determinations regarding Hernandez, I would AFFIRM its suppression of Silva’s testimony on the grounds that it was given pursuant to an involuntary waiver of her rights.

. The government acknowledged at oral argument that Silva did not confess to any crime. It seeks to overturn the district court’s suppression order because it claims to have no evidence, aside from Silva’s admission during interrogation, that she is the owner of the car in question.

. Romo violated the ethical rules applicable to interpreters in the courtroom. See Model Code of Professional Responsibilities for Interpreters in the Judiciary Canons 3, 7, reprinted in 1 Harv. Latino L.Rev. 148, 152, 155 (1994) (“Interpreters shall be impartial and unbiased and shall refrain from conduct that may give an appearance of bias”; "Interpreters shall limit themselves to interpreting ... and shall not give legal advice, express personal opinions [etc.]_"); see also 28 U.S.C. § 1827 (requiring certification of courtroom interpreters). While the exigencies of the moment often dictate that authorities settle for less outside of court than is required in court, it does not follow that outside of court, any interpretation will do. Under any standard, the use of Em uneducated and inexperienced translator who took an active role in encouraging Silva to cooperate was inadequate.